Good morning, Your Honour. Good morning, Your Honour. Good morning, Your Honour. May it please the Court, my name is Ahmed Abdullah. I'm representing the petitioner in this matter. Your Honour, the petitioner in this matter has filed a motion to reopen before the Board of Immigration Appeals. In the meantime, she has retained counsel in San Francisco to represent her in a petition for review with the Ninth Circuit here. The motion to reopen was timely filed to the Board of Immigration Appeals within 90 days, as required by law. However, the Board mistakenly rendered a decision denying the motion, stating that it was untimely one day late. While reviewing the calendar, counsel for petitioner has discovered that the Board made a mistake, then made a motion to reconsider, and the Board, upon reviewing the motion, indeed vacated their order, stating that counsel is correct. In the meantime, during the pendency of the petition for review, counsel for petitioner here in San Francisco advised her that her voluntary departure, which was mandated by the Board's decision, is stalled and stayed until this time. In the meantime, the Board, on the merits of the motion to reopen, issued a decision stating that it is denied because she failed to depart the United States. Petitioner, in all these circumstances, was confused, was very, very emotional, and was unable to comprehend the fact that she had to depart the United States, and she thought at all times that she, the court, would consider all the total circumstances and exceptional circumstances that prevented her from departing the United States. She is married to a U.S. citizen, and the petition has been approved, and the bar for adjustment of status is only for five years, and five years already expired three months ago. And based on that, we asked the court to consider all the total circumstances, and that these circumstances arise to the level of exceptional circumstances that was enough to justify her failure to depart. Thank you, Your Honor. Thank you for your argument, Counsel. We'll hear from the service at this time. Ms. Flippen. Good morning, Your Honors. Laura Flippen for the respondent in this case, the Immigration and Naturalization Service. The question before this Court today is clearly whether the Board's denial of the motion to reopen submitted by Ms. Kumar for the purpose of applying for adjustment of status constitute an abuse of discretion. Under this Court's standards, as expressed both in Schar and other cases, the grander denial of that motion to reopen is within the discretion of the Attorney General. And one of the reasons for denying a motion to reopen is clearly the failure of the alien to show a prima facie case of eligibility. Ms. Kumar was not eligible for adjustment of status because she failed to voluntarily depart. My colleague indicated that the issue of the Board's initial denial of her motion to reopen because the Board had indicated that it had been filed out of time is not relevant here. First of all, the Board did correct that upon a motion to reconsider and noted that it had miscalculated the time and that, indeed, the motion to reopen had been filed in a timely manner. But that's not the issue that's before the Court in considering whether the motion to reopen was appropriately rejected by the Board. It's the question of whether she was eligible for the adjustment of status. And she was not because she failed to voluntarily depart. Her excuse is that her attorney didn't inform her of that, which is not an uncommon, I guess, reason. But in this case, it's a somewhat unusual situation in that we know that the attorney involved was disbarred and prevented from not only California but by the BIA itself and is not allowed to practice immigration law. So it is a slightly different circumstance in this case, wouldn't you say? I am aware that Attorney Miguel Gatta has been disbarred by both the State of California and by the Board of Immigration Appeals. But in her reply brief to this Court, Ms. Kumar admitted that her counsel who represented her was not Mr. Gatta. It was, in fact, William Gardner. She states that explicitly in her reply brief. Mr. Gardner is not someone who has been disbarred before the Court. Counsel suggested some other issues in his remarks to the Court today, including the ---- Let me ask you a little more global question then. Do you think that ineffective assistance of counsel may legally be considered as part of an exceptional circumstance under permitting a late filed motion to reopen? I think there are situations, certainly, Your Honor, in which ineffective assistance of counsel would rise to meet that exceptional circumstance justification. This is not that case. The evidence in the record here doesn't show something constituting ineffective assistance of counsel. Something that, again, my colleague said a few minutes ago was that she was told by her counsel that he would let her know when her petition for review had been ---- that's actually not in the record. She's never indicated that before today that he would tell her that. She simply said that he told her that when her petition for review was filed, that she did not have to depart at that time. And that was accurate. Once the petition for review was dismissed by the Court, of course, she was obligated to voluntarily depart. There's simply not enough in the record that suggests that the Board could ---- was compelled to determine that there was ineffective assistance of counsel. What in the record indicates that the Board considered this claim? I'm sorry, Your Honor. What in the record indicates that the Board considered and actually ruled on the claim of ineffective assistance of counsel? The Court ---- the Board did look at that instance, and it just didn't find that there was any reason that Ms. Kamara, first of all, couldn't have asked her counsel, couldn't have checked the record herself, couldn't have determined that, or that it was clear that her counsel had not contacted her or had not ever told her that once the petition for review was dismissed that she would have to voluntarily depart. I would submit to the Court that the record just simply isn't that conclusive that her counsel had not contacted her or had not asked her counsel. And I would also submit to the Court that Ms. Kamara is not the cause of her reason not to depart. Mr. Gatta's not unfamiliar to your office, is he? No, Your Honor. We are familiar with Mr. Gatta. That's correct. Have you read his briefs? I have read one of his briefs, yes, sir. And have you argued against him? No, sir, I have not. Have you talked to your colleagues about it? Yes, sir. It's pretty bad. I can't dispute the Board's conclusion that Mr. Gatta should indeed not be admitted to practice before the Board. Again, he wasn't Ms. Kamara's attorney in this case. It was William Gardner, and she admits that. If I might return to my prior question, I'm reading the Board's conclusion, and that's the document, that's the order that we have to judge on a petition for review, and I just don't see any consideration of, specific consideration of the ineffective assistance of counsel. Well, she didn't, to my knowledge, raise that until before this Court. She did raise it in a brief before this Court, but I was unclear about that previously. She did not raise it before the... So we don't have a ruling from the BIA about whether or not the performance of counsel constitutes an exceptional circumstance. The Board hasn't opined on that in this case, right? No, Your Honor. If I can just have a minute, I just want to confirm that. I'm looking at the notes right now. Yeah, go ahead. No, Your Honor. We don't have the Board's indication on that. So if it were properly presented to the Board, and if it's a live issue, wouldn't the appropriate procedure be to remand for the Board to determine that in the first instance? It would, Your Honor. Again, if there was enough in the record to suggest that that was something that could colorably rise to that. I think the record reflects that the Board's decision was correct. But if this Court were to decide otherwise, the correct approach would indeed be to remand to the Board rather than for this Court to make that determination in the first instance. Okay. If she had departed after this Court dismissed her petition to us, what would have happened to her application for adjustment of status? She can always refile an application for adjustment from abroad, Your Honor, through a visa petition. I would note that counsel indicated the petition has been approved. I think, as this Court knows, there is a difference between the approval of a petition and the availability of a grant of adjustment. And the mere approval doesn't mean that the alien is close to having that adjustment actually granted. It just means the application has been approved. And there are a number of checks and background work, including the security items that are commonplace now that would have to be gone through. There's no indication that the alien is in any way proximate to having such an adjustment granted. But she could file from abroad to have an approved visa petition for such entry. If she's required to leave after this proceeding, does she face an additional disability for having failed to voluntarily depart? Your Honor, her failure to voluntarily depart, I believe, would preclude her from reentry for a period of five years unless, again, she could show some extraordinary circumstance. And would the five years be measured for when she should have departed or when she actually did depart? I believe it's measured from the time of her actual departure, Your Honor. But I am not certain about that. And I'd be happy to submit to the court the standard for that. I just thought of that because your colleague may have mentioned it. I guess it's been five years already and made me wonder if the clock has already been ticking, so that's no longer an issue. But it sounds like it probably still is an issue. I can certainly inform the court about that in a written submission if the court would so request. Your Honor, if the court has no further questions, I would just sum up by adding to one additional point raised by counsel, and that is that the government should be stopped from enforcing the deportation order because of the error in calculating the time on the motion to reopen. Again, the time on calculating the motion to reopen is sort of a red herring here. It's not really the central question. There's no evidence of affirmative misconduct by the government here. And there would have to, even if there were an affirmative misconduct, there would have to be evidence under the JASA standard that the government's conduct worked a serious injustice, I think is the language of that case. And I think there is not evidence of that here based on, again, the time issue of whether the motion to reopen was denied in a timely manner. So for the initial reason I stated, the government would simply request that the court affirm the board's motion to reopen, the board's denial of the motion to reopen. In the alternative, should the court choose to determine that that was an inappropriate exercise by the board based on the ineffective assistance claim that the matter be remanded to the board for determination of whether an effective assistance of counsel existed. Thank you for your argument, counsel. Rebaba? On page 4 of the administrative record, it shows that William Gardner is an employee of Mr. Gaida's office. The petition for review, the copy of the petition for review is there. And Mr. Gaida was the principal and he was the one that was disbarred. As far as the five years bar, Your Honor, it is from the day of voluntary departure, which was in 1998, July 1998. The five years has already expired. And if she were to debar the United States now, she would be barred for 10 years from coming back based on the 310-year bar, according to the new law. Yeah, so basically you're saying it's not five years, it's probably 10 years that she's barred from coming back. The 310-year bar, Your Honor, is different from the five-year bar. Five-year bar for the relief. But the 10-year bar is for coming back to the United States. Yes. Thank you, Your Honor. Thank you very much for your argument. Thank both counsel for their argument. They were quite helpful. The case just argued will be submitted for decision. And we will proceed to Perez and Aja. Thank you, Your Honor. Counsel are present on that.
judges: Hawkins, Thomas, Clifton